IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | Case No. CR10-0050 |
| vs. | ‖ | ORDER FOR PRETRIAL DETENTION |
| SCOTT ANTHONY BISHOP, | ‖ | |
| Defendant. | ‖ | |

_____

On the 25th day of June, 2010, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by his attorney, E. Daniel O'Brien.

## RELEVANT FACTS

On June 22, 2010, Defendant Scott Anthony Bishop was charged by Indictment (docket number 2) with manufacturing methamphetamine within 1,000 feet of a school. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on August 23, 2010.

Matt Jackson of the Cedar County Sheriff's Office testified regarding the circumstances underlying the instant charge. In January 2010, Jackson checked the "pseudo-logs" at area pharmacies, and discovered that Defendant was over the legal limit for the purchase of pseudoephedrine in a 30-day time period. On January 20, 2010, Jackson performed a "trash rip," taking Defendant's trash from the curb and searching its contents. Jackson found items associated with the manufacture of methamphetamine, including a peeled lithium battery, blister packs, and burnt foil. Jackson obtained a search warrant, and on January 21, 2010, law enforcement executed the search warrant on

1

Defendant's residence. Upon searching Defendant's residence, law enforcement officers found items consistent with the manufacture of methamphetamine, including tubing, filters with sludge, lithium strips, and Coleman fuel. When questioned, Defendant denied being involved in the manufacture of methamphetamine. Defendant claimed that he was set up. Defendant was charged in state court and placed on pretrial release after posting $25,000 bond.

On May 24, 2010, law enforcement received a report from a farmer who observed an individual in a "gold car" throwing items into a ditch. Law enforcement searched the ditch and found items consistent with the manufacture of methamphetamine, including tubing and an ether can with holes punched in the bottom. The farmer reported the license plate number and authorities determined it was registered to Defendant.

On June 12, 2010, law enforcement received a report of an individual tampering with anhydrous tanks. A "gold car" was also reported at the site of the anhydrous tanks. Law enforcement officers responded and could hear someone running in woods near the anhydrous tanks. There was a nearby creek. Officers also found a container and homemade funnel made from a Mountain Dew bottle. A "gold car" was stopped on a gravel road a quarter mile south of the anhydrous tanks. Defendant was driving the car. Defendant was wet from the waist down. There were also two passengers, a male and a female, in the car.

A search of the vehicle revealed items associated with the manufacture of methamphetamine, including lithium batteries, Coleman fuel, ground up pseudoephedrine, tubing, and Mr. Plumber drain cleaner. Defendant claimed that the two passengers had been using his car for the past week, and the items belonged to them. The female passenger stated that they picked Defendant up and went to Wal-Mart. She also admitted buying methamphetamine from Defendant at his house for about a month. The male passenger stated that Defendant asked him to buy tubing and lithium batteries so that Defendant could "cook" the methamphetamine. He also admitted that they intended to steal the anhydrous.

2

Following the vehicle stop, Defendant consented to a search of his house. The search of Defendant's residence revealed items consistent with the manufacture of methamphetamine, including a glass bowl containing Coleman fuel, methamphetamine, a burn barrel, and a peeled lithium battery. During the search of his residence, Defendant was arrested for assaulting an officer. The officers stopped the search and obtained a search warrant. When he was booked, Defendant admitted using methamphetamine within the last two days. Additionally, Defendant's clothes were washed and a baggie of methamphetamine was discovered in his clothing.

According to the pretrial services report, Defendant is 40 years old and resides in Clarence, Iowa. Defendant is currently separated from his wife of eighteen years. They have a 16 year old daughter. Defendant was previously married and divorced approximately 22 years ago. The pretrial services report states that no children resulted from that marriage. In Defendant's proffer, he stated that he also had a 21 year old daughter and grandson who lived in Clarence.

Defendant dropped out of school in the 11th grade. Defendant was employed by his brother as a "subcontractor" for about two months prior to his arrest. Prior to working for his brother, Defendant was employed as a forklift operator for about three years at BWC Companies. Prior to his employment at BWC Companies, Defendant worked as a truck driver for about sixteen years.

Defendant suffered a mild stroke in 2005, and as a result suffers from memory problems. Otherwise, Defendant does not have any physical or mental health issues. Defendant admitted to using methamphetamine at least once per week starting about six years ago, with his last use being about one month ago. Defendant has undergone outpatient substance abuse treatment on two occasions, including current treatment through MECCA Services in Iowa City, Iowa.

In 2005, Defendant was charged with possession of methamphetamine. He received a deferred judgment and one year of probation. (An accompanying charge of possession of drug paraphernalia was dismissed.) He successfully completed his probation and was

discharged from probation in March 2007. On January 21, 2010, Defendant was charged with a controlled substance violation as a consequence of the events described above, and placed on pretrial release. His pretrial release was revoked on June 14, 2010, after being charged with a controlled substance violation and two counts of possession of pseudoephedrine. Both cases remain pending in state court.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with manufacturing methamphetamine within 1,000 feet of a school, one of the offenses found in § 3142(f)(1).

4

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with manufacturing methamphetamine within 1,000 feet of a school. The evidence against Defendant is strong. Two searches of Defendant's residence and a search of his car revealed materials consistent with the manufacture of methamphetamine. A witness will also testify that she purchased methamphetamine from Defendant at his house. Significantly, while Defendant

was on pretrial release for a state court controlled substance violation, he was charged with another controlled substance violation and two counts of possession of pseudoephedrine. Defendant's pretrial release was revoked after the second charge in state court. Both cases remain pending in state court. Defendant has lived in eastern Iowa all of his life and the Court believes that it is unlikely Defendant would flee. Given Defendant's apparent manufacture of methamphetamine while on pretrial release, however, the Court believes that Defendant's release would pose a danger to the community.

The Government has the burden of proof in this regard. It is aided in this case, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). If the Court finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. The return of an Indictment by a Grand Jury is sufficient to support a finding by the Court that there is probable cause to believe that the Defendant committed the offense identified in the Indictment. *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987). In a "presumption case," the defendant bears a limited burden of production--not a burden of persuasion--to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes

that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1.    The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.    The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.    On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.    The time from the Government's oral motion to detain (June 22, 2010) to the filing of this Ruling (June 25, 2010) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act.  18 U.S.C. § 3161(h)(1)(F).

DATED this 25th day of June, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA